AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | FILED ____ LODGED |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | ____ RECEIVED |
| | ) | JUL 27 2018 |
| THE PERSON OF KENNETH CURRIN SCHUCHMAN, AS FURTHER DESCRIBED IN ATTACHMENT A | ) ) ) | CLERK U.S. DISTRICT COURT WESTERN DISTRICT OF WASHINGTON AT TACOMA BY                    DEPUTY |

Case No. MJ18-5187

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**See Attachment A.**

located in the _____ **Western** _____ District of _____ **Washington** _____ , there is now concealed *(identify the person or describe the property to be seized):*

**See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1030 | Unauthorized Damage to a Protected Computer |
| 18 USC 1343 | Wire Fraud |

The application is based on these facts:

**See Attached Affidavit.**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Elliott Peterson, Special Agent**

Sworn to before me pursuant to CrimRule 4.1.

Date: 7/27/18

_____
*Judge's signature*

City and state: **Tacoma, Washington**          **J. Richard Creatura, United States Magistrate Judge**
*Printed name and title*

**AFFIDAVIT**

STATE OF WASHINGTON    )
                             )    ss
COUNTY OF PIERCE        )

I, **Elliott Peterson**, having been duly sworn, state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the Federal Bureau of Investigation, and have been so employed since 2011. I am currently assigned within the Anchorage Field Office to the Counter Intelligence / Cyber Squad. I perform and have performed a variety of investigative tasks, including functioning as a case agent on computer crime cases. Since becoming a Special Agent of the FBI, I have received many hours of specialized cyber training, including on the topic of computer networking. I have also received training and gained experience in interviewing and interrogation techniques, the execution of federal search warrants and seizures, and the identification and collection of computer-related evidence. I specialize in the investigation of botnets, Distributed Denial of Service (DDOS), and embedded devices, also known as the "Internet of Things" (IoT).

2.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search of the person of KENNETH CURRIN SCHUCHMAN within the Western District of Washington, hereinafter the "SUBJECT," as more fully described in Attachment A to this Affidavit, for the property and items described in Attachment B to this Affidavit. Because I work out of the Anchorage Field Office, and due to the technical nature of the evidence described below, I request that I be allowed to present this application by telephone pursuant to Local Criminal Rule 41(d)(3). In compliance with Local Criminal Rule 41, this application has been reviewed by Francis Franze-Nakamura who is an Assistant United States Attorney for the Western District of Washington.

3.     The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  investigation, including other law enforcement officers; interviews of cooperating
2  witnesses; review of documents and records related to this investigation; communications
3  with others who have personal knowledge of the events and circumstances described
4  herein; and information gained through my training and experience.

5       4.      Because this Affidavit is submitted for the limited purpose of establishing
6  probable cause in support of the application for a search warrant, it does not set forth
7  each and every fact that I or others have learned during the course of this investigation.  I
8  have set forth only the facts that I believe are necessary to establish probable cause to
9  believe that evidence, fruits and instrumentalities of violations of 18 U.S.C. §§ 1030
10  (unauthorized damage to a protected computer) and 1343 (wire fraud) have been
11  committed by the SUBJECT by means of digital devices on his person or in his
12  immediate control.

13                        **THE INVESTIGATION**

14       5.      The FBI is currently investigating the SUBJECT of this search warrant
15  application, KENNETH SCHUCHMAN (a.k.a. "Nexus"), and his co-conspirators Aaron
16  Sterritt (a.k.a. "Vamp") and Logan Shwydiuk (a.k.a. "Drake"), and their respective roles
17  in the development and employment of successor variants of the Mirai botnet known as
18  "Nexus_Mirai," "Satori," and "Masuta."  These botnets have infected hundreds of
19  thousands of devices, including devices within the United States.  The Nexus_Mirai
20  botnet has infected devices within the District of Alaska and the Western District of
21  Washington.  Devices located within the District of Alaska have been forced to
22  participate in Nexus_Mirai DDOS attacks, as described below.  These botnets have been
23  utilized to conduct DDOS attacks against targets within the United States.

24                        *Cooperating Witness 1*

25       6.      Since October 2016, the FBI has been investigating the progenitor Mirai
26  botnet.  The Mirai botnet was used in the summer and fall of 2016 to conduct massive
27  DDOS attacks, sufficient in duration and intensity to cause significant damage to some of
28  the world's largest Internet Service Providers (ISPs).  Even companies who specialize in

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    DDOS defense incurred significant monetary losses as a result of Mirai-based DDOS

2    attacks.  At its peak, the botnet consisted of more than 300,000 compromised computing

3    devices.  The Mirai botnet targeted IoT devices.  Examples of IoT devices targeted by

4    Mirai include internet-connected closed circuit TV cameras and digital video recorders.

5            7.      The FBI's investigation into the Mirai botnet led to the establishment of

6    multiple cooperating witnesses.  One of the Mirai co-conspirators, Cooperating Witness 1

7    (CW1), has agreed to assist the government in its ongoing Nexus_Mirai and Masuta

8    investigations.

9            8.      CW1 is assisting the government pursuant to a plea agreement that provides

10   CW1, along with his co-defendants, the opportunity to argue for a reduced sentence if

11   CW1 is shown to have provided substantial assistance in ongoing investigations.  CW1

12   has been cooperating since July 2017.  Both of his co-defendants began cooperating

13   shortly thereafter.

14           9.      During this period of cooperation, I have found CW1 to be detailed and

15   honest in his production of information.  He has no prior criminal history.  CW1 is well-

16   versed in matters concerning IoT botnets and DDOS attacks.  CW1 also has an expert

17   understanding of many computer science and programming matters.  While cooperating,

18   CW1 has sought additional training in programming and topics relevant to his continued

19   assistance of the government.  I have been able to independently corroborate the

20   information provided to the government by CW1, either by consulting with industry

21   experts or other cooperating witnesses, or by comparing CW1's data to data produced

22   through other mechanisms such as grand jury subpoenas, or because the provided data

23   was in an audio or video format, and reviewable in its entirety.

24                                    *Criminal Organization*

25           10.     Based upon the work of CW1, as well as independent investigation, I know

26   that the Nexus_Mirai botnet was operated primarily by the SUBJECT beginning in

27   November 2017, and continuing in various forms to the present.  The Masuta and Satori

28   variants were developed and operated by the SUBJECT, Sterritt, Shwydiuk and others

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   still unidentified.  For the purpose of clarity, I understand both Masuta and Satori to be

2   Mirai variants that predominantly utilize a code base principally developed by Sterritt

3   ("Vamp").  This is in contrast to the Nexus_Mirai variant which I understand to be

4   principally developed by the SUBJECT.  For simplicity, I will refer to the Masuta and

5   Satori family of variants simply as Masuta for the remainder of the affidavit.

6         11.     The SUBJECT utilizes the nickname "Nexus" and resided until recently at

7   his grandmother's residence in the Vancouver, Washington area.  At this time, however,

8   the SUBJECT does not have a stable residence or predictable lodging.

9         12.     The SUBJECT's co-conspirator, Sterritt, principally utilizes the nickname

10  "Vamp" and is known to reside in Northern Ireland.  The third co-conspirator, Shwydiuk,

11  utilizes the nickname "Drake" and is a resident of Canada.  The SUBJECT, Sterritt, and

12  Shwydiuk all are well known to law enforcement, and have engaged in many online

13  crime schemes over the years, although I am only investigating their assembly of botnets

14  for the purpose of conducting DDOS attacks.

15        13.     I have reviewed audio and video conversations, recorded by CW1, between

16  the SUBJECT, Shywdiuk, and Sterritt, in which they discuss their ongoing schemes and

17  refer to each other by their online nicknames.  For example, in one such chat on

18  November 22, 2017, the SUBJECT, Sterritt, and others discuss the development of the

19  botnet.  In particular, they discuss programming languages and methods that are being

20  used to improve the botnet.  Their discussion of the attacks also referenced "NineGigs,"

21  which I know to be a reference to the online nickname of an employee at the DDOS

22  defense company ProxyPipe.

23        14.     As part of this investigation I have interviewed an employee of the

24  ProxyPipe company.  According to the employee, ProxyPipe has been targeted multiple

25  times by the Masuta botnet, starting in November 2017.  ProxyPipe is a U.S. company.

26        15.     CW1 has communicated with the SUBJECT via Skype, a messaging

27  platform, where the SUBJECT uses the Skype handle "TsGH Nexus Zeta."  During a

28  Skype video chat recorded on November 29, 2017, the SUBJECT states, "Me and Vamp

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1   literally ran Satori with 100K on a five dollar box and nulled ProxyPipe."  Based upon

2   my training and experience, I know that when the SUBJECT states that he "ran Satori

3   with 100K" he is referencing a DDOS botnet with at least 100,000 infected devices.

4   When the SUBJECT references a "five dollar box," he is indicating that he hosted the

5   botnet utilizing a very cheap server.  Finally, "nulled ProxyPipe" is meant to indicate that

6   the SUBJECT's botnet conducted a DDOS attack against ProxyPipe and succeeded in

7   disrupting network communications for some time period.  During this recorded video

8   chat, the SUBJECT is recognizable by both voice and face.  I have reviewed Department

9   of Motor Vehicles (DMV) photographs of the SUBJECT and confirmed that the face

10  from the video chat visually matches the face from the DMV photograph.  During this

11  chat, the SUBJECT actually affirmatively states that his name is KENNETH

12  SCHUCHMAN.

13      16.    The SUBJECT is also associated with various domains including

14  nexusiotsolutions[.]net, nexuszeta[.]com, and zetastress[.]net.  Historically, these

15  domains have been associated with DDOS attacks.  The first referenced domain,

16  nexusiotsolutions.net, has been utilized as part of the command and control protocol for

17  the Masuta botnet.  This malicious use of the domain has been determined by various

18  security researchers who have observed malware payloads, in which the victim devices

19  are sent instructions referencing the nexusiotsolutions[.]net domain.  Essentially, the

20  victim devices are forced to communicate with this domain when they become part of the

21  Masuta botnet.

22      17.    I have searched email accounts utilized by the SUBJECT to register or

23  maintain the above domains and services.  These email accounts contain many references

24  to his true identity, including copies of government-issued identification cards.  One of

25  his email accounts also contains abuse notifications from hosting providers related to the

26  operation of his botnet.  This means that he was notified that botnets he was operating

27  had been discovered by Internet security researchers.  Within the SUBJECT's internet

28  search history, I found many references to the Mirai botnet.  Similarly, I found many

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 5

1   references to IoT credentials, meaning that the SUBJECT was searching for usernames

2   and passwords that could be used to access IoT devices, the type of devices upon which

3   his botnet was built. Based upon my investigation I have concluded that the SUBJECT is

4   the individual also known as "Nexus" who has operated the Nexus_Mirai botnet using

5   digital devices within his possession and control as instrumentalities of the subject

6   offenses.

7       18.    The SUBJECT has had an unsteady relationship with Sterritt, which is

8   relatively common for cybercriminals. Based upon conversations with CW1, and

9   conversations that CW1 has recorded with both the SUBJECT and Sterritt, it appears that

10  they frequently disagree. For example, according to CW1, approximately two months

11  ago Sterritt came to the conclusion that the SUBJECT was cooperating with law

12  enforcement and cut him out of his operation. They have not yet reconciled. I am

13  unaware of any cooperation, past or present, between the SUBJECT and law

14  enforcement.

15      19.    I have tracked subject's botnet development through several methods,

16  including focusing on the domains and IP addresses utilized to compromise victim

17  devices and issue attack commands. My investigation has determined that the following

18  IP addresses and domains have been associated with the SUBJECT's command and

19  control of his botnet and DDOS activities: 185.188.206.99, 45.32.238.229, 208.78.71.34,

20  nexusiotsolutions,com, nexuszeta.com, and zetastress.net.

21      20.    The SUBJECT's activities have harmed users in Alaska and elsewhere.

22  While the full extent of harm is still being investigated, I have determined that Alaskan

23  devices participated in at least one of Sterritt's DDOS attacks conducted utilizing his

24  Masuta botnet. On August 13, 2017, the Masuta botnet was utilized to attack servers

25  belonging to the U.S. company Take-Two Interactive Software Inc. (Take-Two). I was

26  able to determine that the botnet utilized to conduct this attack was Masuta based upon

27  examining logs relating to attack commands issued from a known Masuta command and

28  control server. This attack targeted an authentication server utilized by Take-Two and

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  prevented the proper functioning of several of their servers. Take-Two has logs relating
2  to the devices which participated in this attack, and at least two separate IPs
3  corresponding to two Alaskan Internet Service Providers appear within this log, meaning
4  that two devices utilizing Alaskan IPs were part of the botnet. This is consistent with
5  previously observed activity from other DDOS botnets such as Mirai and Nexus_Mirai.

6        21.    At the time of these attacks, CW1 was frequently in communication with
7  Sterritt. I have reviewed an audio recording of a conversation on August 13, 2017, in
8  which CW1 discusses an attack against Take-Two. I recognize the voice of the other
9  party in the conversation to be Sterritt's. During the conversation, Sterritt discusses that
10 he was able to conduct a successful DDOS attack against Take-Two, by focusing his
11 attack on the authentication server, as was separately indicated in Take-Two's logs of the
12 attacks.

13       22.    CW1 has communicated with the SUBJECT frequently via mobile phone,
14 to include text messages. On June 4, 2018, the SUBJECT, using a mobile phone, asked
15 CW1 to create a bitcoin wallet in order to transfer to him proceeds from a "client who
16 wants a spot." I have seen the SUBJECT and others utilize this language previously to
17 describe customers for a botnet. The SUBJECT recently provided CW1 with access to a
18 server that CW1 understands to be utilized by the SUBJECT to actively manage a botnet.

19       23.    Pursuant to a search warrant issued in the District of Alaska, I received
20 location data relative to this previously utilized phone number during June and July 2018.
21 That data indicated that the SUBJECT is residing in the Vancouver, Washington area.
22 That data also indicated that the SUBJECT recently switched phone numbers, and is no
23 longer a subscriber for the previously utilized phone number.   Based on this recent
24 location data, as well as other information available to law enforcement, the SUBJECT is
25 not believed to have a stable residence at this point.

26       24.    CW1 contacted the SUBJECT via a new cell phone number on July 12,
27 2018. On that date, CW1 confirmed with the SUBJECT that he was actively utilizing the
28 cell phone number. CW1 again exchanged text messages with the SUBJECT on July 19,

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   2018, indicating that the SUBJECT is still in active use of the cell phone number.  On

2   July 20, 2018, CW1 and the SUBJECT had a telephone conversation regarding

3   Schuchman flying to visit CW1.  During this call, the SUBJECT was utilizing the same

4   cell phone number.

## TECHNICAL TERMS

6          25.    Based on my training and experience, I use the following technical terms to

7   convey the following meanings:

8          a.     "DDOS" or "DDOS attacks" are distributed denial of service

9   attacks.  DDOS attacks are a specific type of cyberattack, in which a perpetrator intends
    to disrupt services of a server or host on the Internet.  Often these attacks are undertaken

10  by flooding a server with numerous requests, causing the server to overload and become
    unable to respond to incoming traffic.  A common example of a DDOS attack would be

11  thousands of simultaneous requests to a webpage, which would cause the webpage to

12  become inoperable due to the server's inability to accept and respond to all the incoming
    traffic.

13

14         b.     A "botnet" is a network of computers communicating together, or
    controlled by common computers.  Cybercriminals often infect victim machines and use

15  them in unison with other infected machines to undertake further coordinated activities

16  such as DDOS attacks.  The victim machines under the control of the cybercriminal
    would be the cybercriminal's "botnet," as they are numerous computers under his/her

17  control.  Using the multitude of computers, a cybercriminal could conduct a DDOS attack

18  by commanding his botnet to attack a single website in unison, causing the website to
    become inoperable.

19

20         c.     The "Internet of Things," or IoT, is a classification of embedded
    devices that are computers pursuant to the definitions relevant to 18 U.S.C. § 1030.

21  These devices commonly run variations of the Linux operating system and are designed

22  around a core set of features.  Some examples of IoT devices include internet switches,
    routers, DVRs, and surveillance systems, among other devices.

23

24         d.     Mirai is the name of a large DDOS botnet comprised primarily of
    IoT devices that was developed and deployed in 2016 by a criminal group that did not

25  include the SUBJECT of this investigation or Sterritt.  That criminal group subsequently

26  released the code for Mirai publically in 2016 in an unsuccessful effort to avoid
    apprehension, resulting in many subsequent variants being utilized in later DDOS attack

27  schemes by other criminal actors.

28

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 8

1         e.    A "Whois" search provides publicly available information as to
2    which entity is responsible for a particular IP address or domain name. A Whois record
     for a particular IP address or domain name will list a range of IP addresses that that IP
3    address falls within and the entity responsible for that IP address range and domain name.
4    For example, a Whois record for the domain name XYZ.COM might list an IP address
     range of 12.345.67.0– 12.345.67.99 and list Company ABC as the responsible entity. In
5    this example, Company ABC would be responsible for the domain name XYZ.COM and
6    IP addresses 12.345.67.0– 12.345.67.99.

7         f.    IP Address: The Internet Protocol address (or simply "IP address") is
8    a unique numeric address used by computers on the Internet. An IP address looks like a
     series of four numbers, each in the range 0-255, separated by periods (e.g.,
9    121.56.97.178). Every digital device attached to the Internet must be assigned an IP
10   address so that Internet traffic sent from and directed to that digital device may be
     directed properly from its source to its destination. Most Internet service providers
11   control a range of IP addresses. Some computers have static – that is, long-term – IP
12   addresses, while other computers have dynamic – that is, frequently changed – IP
     addresses.
13
14        g.    Internet: The Internet is a global network of computers and other
     electronic devices that communicate with each other. Due to the structure of the Internet,
15   connections between devices on the Internet often cross state and international borders,
16   even when the devices communicating with each other are in the same state.

17        h.    Electronic Storage media: Electronic Storage media is any physical
     object upon which data can be recorded. Examples include hard disks, RAM, floppy
18   disks, flash memory, CD-ROMs, and other magnetic or optical media.

19   **COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**
20       26.    As described above and in Attachment B, this application seeks permission
21   to search for evidence, fruits, and/or instrumentalities that might be found on the person
22   of the SUBJECT or in his immediate control, in whatever form they are found. One form
23   in which the evidence, fruits, and/or instrumentalities might be found is data stored on
24
25
26
27
28

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 9

1   digital devices[1] such as computer hard drives or other electronic storage media.[2]  Thus,

2   the warrant applied for would authorize the seizure of digital devices or other electronic

3   storage media or, potentially, the copying of electronically stored information from

4   digital devices or other electronic storage media, all under Rule 41(e)(2)(B).

5        27.    *Probable cause.*  Based upon my review of the evidence gathered in this

6   investigation, my review of data and records, information received from other agents and

7   computer forensics examiners, and my training and experience, I submit that if a digital

8   device or other electronic storage media is found on or in the immediate control of the

9   SUBJECT, there is probable cause to believe that evidence, fruits, and/or

10  instrumentalities of the crimes of 18 U.S.C. §§ 1030 (unauthorized damage to a protected

11  computer) and 1343 (wire fraud) will be stored on those digital devices or other

12  electronic storage media.  I believe digital devices, including a cellular phone and laptop

13  computer, are being used to conduct research into vulnerabilities for digital devices later

14  compromised by the SUBJECT in order to increase the size and power of his botnet.  I

15  also believe that digital devices are utilized to maintain control over the victim devices of

16  which make up the SUBJECT's botnet, and that these same devices are utilized to issue

17  DDOS attack commands.  I would expect to find files, applications, and Internet artifacts

18  on the SUBJECT's digital devices that relate to his aforementioned botnet activities.

19  This expectation is further reinforced by searches executed upon the SUBJECT's email

20  accounts in which such artificats were located.  There is, therefore, probable cause to

21

22  _____

23  [1] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters,

24  monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as

25  mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices

26  (GPS), or portable media players.

27  [2] Electronic Storage media is any physical object upon which electronically stored information can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other

28  magnetic or optical media.

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  believe that evidence, fruits and/or instrumentalities of the crimes of 18 U.S.C. §§ 1030

2  (unauthorized damage to a protected computer) and 1343 (wire fraud) exists and will be

3  found on digital device or other electronic storage media on the person of the SUBJECT

4  or in his immediate control, for at least the following reasons:

5          a.      Based on my knowledge, training, and experience, I know that

6  computer files or remnants of such files can be preserved (and consequently also then
   recovered) for months or even years after they have been downloaded onto a storage

7  medium, deleted, or accessed or viewed via the Internet.  Electronic files downloaded to a

8  digital device or other electronic storage medium can be stored for years at little or no
   cost.  Even when files have been deleted, they can be recovered months or years later

9  using forensic tools.  This is so because when a person "deletes" a file on a digital device

10 or other electronic storage media, the data contained in the file does not actually
   disappear; rather, that data remains on the storage medium until it is overwritten by new

11 data.

12         b.      Therefore, deleted files, or remnants of deleted files, may reside in

13 free space or slack space—that is, in space on the digital device or other electronic
   storage medium that is not currently being used by an active file—for long periods of

14 time before they are overwritten.  In addition, a computer's operating system may also

15 keep a record of deleted data in a "swap" or "recovery" file.

16         c.      Wholly apart from user-generated files, computer storage media—in

17 particular, computers' internal hard drives—contain electronic evidence of how a
   computer has been used, what it has been used for, and who has used it.  To give a few

18 examples, this forensic evidence can take the form of operating system configurations,

19 artifacts from operating system or application operation; file system data structures, and
   virtual memory "swap" or paging files.  Computer users typically do not erase or delete

20 this evidence, because special software is typically required for that task.  However, it is

21 technically possible to delete this information.

22         d.      Similarly, files that have been viewed via the Internet are sometimes

23 automatically downloaded into a temporary Internet directory or "cache."

24     28.     As discussed in greater detail above, the SUBJECT uses digital devices in

25 his personal possession to research, maintain, and conduct DDOS attacks in violation of

26 18 U.S.C. § 1030.  The creation of botnets in order to execute DDOS attacks upon third

27 parties is predicated upon the compromise of victim IoT devices such as home internet

28 routers.  Previous examination of the SUBJECT's internet search history and email

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  accounts, as authorized by previously issued search warrants in the District of Alaska,

2  have revealed the SUBECT has used his personal digital devices to research methods for

3  the creation, control, and deployment of sophisticated IoT botnets. As a result, these

4  personal digital devices are expected to be permeated with evidence of these crimes and

5  were used primarily during the period in question as instrumentalities of these offenses.

6      29.    *Forensic evidence.* As further described in Attachment B, this application

7  seeks permission to locate not only computer files that might serve as direct evidence of

8  the crimes described on the warrant, but also forensic electronic evidence that establishes

9  how digital devices or other electronic storage media were used, the purpose of their use,

10  who used them, and when. There is probable cause to believe that this forensic electronic

11  evidence will be on any digital devices or other electronic storage media located on the

12  person of the SUBJECT or in his immediate control because:

13      a.    Stored data can provide evidence of a file that was once on the
14  digital device or other electronic storage media but has since been deleted or edited, or of
    a deleted portion of a file (such as a paragraph that has been deleted from a word
15  processing file). Virtual memory paging systems can leave traces of information on the
    digital device or other electronic storage media that show what tasks and processes were
16  recently active. Web browsers, e-mail programs, and chat programs store configuration
17  information that can reveal information such as online nicknames and passwords.
    Operating systems can record additional information, such as the history of connections
18  to other computers, the attachment of peripherals, the attachment of USB flash storage
19  devices or other external storage media, and the times the digital device or other
    electronic storage media was in use. Computer file systems can record information about
20  the dates files were created and the sequence in which they were created.
21
22      b.    As explained herein, information stored within a computer and other
    electronic storage media may provide crucial evidence of the "who, what, why, when,
23  where, and how" of the criminal conduct under investigation, thus enabling the United
    States to establish and prove each element or alternatively, to exclude the innocent from
24  further suspicion. In my training and experience, information stored within a computer
25  or storage media (e.g., registry information, communications, images and movies,
    transactional information, records of session times and durations, internet history, and
26  anti-virus, spyware, and malware detection programs) can indicate who has used or
27  controlled the computer or storage media. This "user attribution" evidence is analogous
    to the search for "indicia of occupancy" while executing a search warrant at a residence.
28  The existence or absence of anti-virus, spyware, and malware detection programs may

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner and/or others with direct physical access to the computer. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.[1] Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

       c.     A person with appropriate familiarity with how a digital device or other electronic storage media works can, after examining this forensic evidence in its proper context, draw conclusions about how the digital device or other electronic storage media were used, the purpose of their use, who used them, and when.

       d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device or other electronic storage media that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, digital evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored

---

[1] For example, if the examination of a computer shows that: a) at 11:00am, someone using the computer used an internet browser to log into a bank account in the name of John Doe; b) at 11:02am the internet browser was used to download child pornography; and c) at 11:05 am the internet browser was used to log into a social media account in the name of John Doe, an investigator may reasonably draw an inference that John Doe downloaded child pornography.

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  on the computer and the application of knowledge about how a computer behaves.
2  Therefore, contextual information necessary to understand other evidence also falls
   within the scope of the warrant.
3
            e.      Further, in finding evidence of how a digital device or other
4  electronic storage media was used, the purpose of its use, who used it, and when,
5  sometimes it is necessary to establish that a particular thing is not present.  For example,
   the presence or absence of counter-forensic programs or anti-virus programs (and
6  associated data) may be relevant to establishing the user's intent.
7
            **DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES**
8
      30.     As discussed above, the investigation has determined that the SUBJECT
9
   has used his personal digital devices to research, develop, maintain and deploy
10
   sophisticated IoT botnets for the purposes of committing offenses under the Computer
11
   Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.  Investigation into the SUBJECT's life
12
   has determined that the SUBJECT's primary "occupation" is the criminal activities
13
   described above.  The SUBJECT does not appear to be lawfully employed or have any
14
   other legitimate source of income at this time other than his criminal activities.
15
      **PAST EFFORTS TO OBTAIN ELECTRONICALLY STORED INFORMATION**
16
      31.     Several other subpoenas and search warrants have issued to date in this
17
   matter for the review of electronically stored information regarding the SUBJECT's
18
   activities.  The United States has applied for, received, and served several search warrants
19
   to Google, Inc., for both content and non-content account information associated with the
20
   SUBJECT, including the DDOS botnet search history described above. Those warrants
21
   also included emails containing the registration of domains associated with the operation
22
   of botnets and the notification of abuse complaints related to those domains.  The
23
   presence of such messages indicates these devices are utilized extensively to facilitate the
24
   SUBJECT's botnet activities
25
      32.     Because of the nature of the evidence that I am attempting to obtain and the
26
   nature of the investigation, I have not made any prior efforts to obtain the evidence based
27
   on the consent of any party who may have authority to consent.  I believe, based upon the
28
   nature of the investigation and the information I have received, that if the SUBJECT

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  becomes aware of the investigation in advance of the execution of a search warrant, he
2  may attempt to destroy any potential evidence, whether digital or non-digital, thereby
3  hindering law enforcement agents from the furtherance of the criminal investigation.

### RISK OF DESTRUCTION OF EVIDENCE

4
5  33.    I know based on my training and experience that digital information can be
6  very fragile and easily destroyed.  Digital information can also be easily encrypted or
7  obfuscated such that review of the evidence would be extremely difficult, and in some
8  cases impossible.  In the instant case, I know that the SUBJECT is familiar with basic and
9  advanced tenets of computer security.  Accordingly I believe subject will utilize practices
10 such as the encryption of storage devices for his digital devices, as well as the usage of
11 encrypted communication programs and protocols.  With such systems, if the digital
12 device is either powered off or if the user has not entered the encryption password and
13 logged onto the computer, it is likely that any information contained on the computer will
14 be impossible to decipher.  If the computer is powered on, however, and the user is
15 already logged onto the computer, there is a much greater chance that the digital
16 information can be extracted from the computer.  This is because when the computer is
17 on and in use, the password has already been entered and the data on the computer is
18 accessible.  However, giving the owner of the computer time to activate a digital security
19 measure, pull the power cord from the computer, or even log off of the computer could
20 result in a loss of digital information that could otherwise have been extracted from the
21 computer.

### REQUEST FOR AUTHORITY TO CONDUCT OFF-SITE SEARCH OF TARGET COMPUTERS

22
23
24 34.    *Necessity of seizing or copying entire computers or storage media.*  In most
25 cases, a thorough search of premises for information that might be stored on digital
26 devices or other electronic storage media often requires the seizure of the physical items
27 and later off-site review consistent with the warrant.  In lieu of removing all of these
28 items from the premises, it is sometimes possible to make an image copy of the data on

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the digital devices or other electronic storage media, onsite.  Generally speaking, imaging is the taking of a complete electronic picture of the device's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the item, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

a.   *The time required for an examination.*  As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable.  As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine the respective digital device and/or electronic storage media to obtain evidence.  Computer hard drives, digital devices and electronic storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.   *Technical requirements.*  Digital devices or other electronic storage media can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises.  However, taking the items off-site and reviewing them in a controlled environment will allow examination with the proper tools and knowledge.

c.   *Variety of forms of electronic media.*  Records sought under this warrant could be stored in a variety of electronic storage media formats and on a variety of digital devices that may require off-site reviewing with specialized forensic tools.

## SEARCH TECHNIQUES

35.   Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging, or otherwise copying digital devices or other electronic storage media that reasonably appear capable of containing some or all of the data or items that fall within the scope of

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Attachment B to this Affidavit, and will specifically authorize a later review of the media

2  or information consistent with the warrant.

3      36.    The United States is seeking authorization to search devices under the

4  exclusive dominion and control of the SUBJECT.  As a result of the fact that the

5  SUBJECT does not appear to have a fixed residence, the United States is planning to

6  approach the subject at a neutral location while the subject is conversing with CW1.  The

7  SUBJECT has requested to meet with CW1 in person in order to discuss criminal botnet

8  activity, among other subjects.  The United States has previously applied for and received

9  search warrants permitting the real time "ping" of cellular devices used by the SUBJECT

10  in order to ascertain his location.  Pursuant to this application, the United States seeks

11  only to search the SUBJECT for his own devices in his immediate possession and search

12  those devices for evidence of the crimes described above.  As a result of the planned

13  search, there is little to no risk that any device other thant those used by the SUBJECT

14  will be examined.

15      37.    Consistent with the above, I hereby request the Court's permission to seize

16  and/or obtain a forensic image of digital devices or other electronic storage media that

17  reasonably appear capable of containing data or items that fall within the scope of

18  Attachment B to this Affidavit, and to conduct off-site searches of the digital devices or

19  other electronic storage media and/or forensic images, using the following procedures:

20      **A.**    **Processing the Search Sites and Securing the Data.**

21      a.    The search team will conduct an initial review of any digital devices

22  or other electronic storage media located on the SUBJECT's person or in his immediate

23  control, as described in Attachment A that are capable of containing data or items that fall
within the scope of Attachment B to this Affidavit, to determine if it is possible to secure

24  the electronically stored information ("ESI") contained on these devices onsite in a
reasonable amount of time and without jeopardizing the ability to accurately preserve the

25  data.

26

27      b.    If, based on their training and experience, and the resources
available to them at the search site, the search team determines it is not practical to make

28  an on-site image within a reasonable amount of time and without jeopardizing the ability
to accurately preserve the data, then the digital devices or other electronic storage media

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 17

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

will be seized and transported to an appropriate law enforcement laboratory to be forensically copied ("imaged") and reviewed.

c.     In order to examine the ESI in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of any digital device or other electronic storage media that is capable of containing data or items that fall within the scope of Attachment B to this Affidavit.[2]  In addition, appropriately trained personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data fall within the list of items to be seized pursuant to the warrant.  In order to search fully for the items identified in the warrant, law enforcement personnel, which may include investigative agents, may then examine all of the data contained in the forensic image/s and/or on the digital devices to view their precise contents and determine whether the data fall within the list of items to be seized pursuant to the warrant.

d.     The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to the warrant.

e.     A forensic image may be created of either a physical drive or a logical drive.  A physical drive is the actual physical hard drive that may be found in a typical computer.  When law enforcement creates a forensic image of a physical drive, the image will contain every bit and byte on the physical drive.  A logical drive, also known as a partition, is a dedicated area on a physical drive that may have a drive letter assigned (for example the c: and d: drives on a computer that actually contains only one physical hard drive).  Therefore, creating an image of a logical drive does not include every bit and byte on the physical drive.  Law enforcement will only create an image of physical or logical drives physically present on or within the subject device.  Creating an image of the devices located at the search locations described in Attachment A will not result in access to any data physically located elsewhere.  However, digital devices or other electronic storage media at the search locations described in Attachment A that

---

[2] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices or other electronic storage media is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures.  When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties.  Computer forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence.  Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess.  Computer forensic examiners, however, often lack the factual and investigative expertise that an investigative agent may possess on any given case.  Therefore, it is often important that computer forensic examiners and investigative personnel work closely together.

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  have previously connected to devices at other locations may contain data from those
2  other locations.

3          f.      If, after conducting its examination, law enforcement personnel
4  determine that any digital device is an instrumentality of the criminal offenses referenced
   above, the government may retain that device during the pendency of the case as
5  necessary to, among other things, preserve the instrumentality evidence for trial, ensure
6  the chain of custody, and litigate the issue of forfeiture.  If law enforcement personnel
   determine that a device was not an instrumentality of the criminal offenses referenced
7  above, it shall be returned to the person/entity from whom it was seized within 60 days of
8  the issuance of the warrant, unless the government seeks and obtains authorization from
   the court for its retention.
9
       **B. Items to be Seized**
10
11         a.      In order to search for ESI that falls within the list of items to be
   seized pursuant to Attachment B to this Affidavit, law enforcement personnel will seize
12  and search the following items (heretofore and hereinafter referred to as "digital
13  devices"), subject to the procedures set forth above:

14             i.      Any digital device capable of being used to commit, further,
15  or store evidence of the offense(s) listed above;

16             ii.      Any digital device used to facilitate the transmission,
   creation, display, encoding, or storage of data, including word processing equipment,
17  modems, docking stations, monitors, printers, cameras, encryption devices, and optical
18  scanners;

19             iii.      Any magnetic, electronic, or optical storage device capable of
20  storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or
   memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives,
21  camera memory cards, media cards, electronic notebooks, and personal digital assistants;

22             iv.      Any documentation, operating logs and reference manuals
23  regarding the operation of the digital device, or software;

24             v.      Any applications, utility programs, compilers, interpreters,
25  and other software used to facilitate direct or indirect communication with the device
   hardware, or ESI to be searched;
26
27             vi.      Any physical keys, encryption devices, dongles and similar
28  physical items that are necessary to gain access to the digital device, or ESI; and

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

vii.   Any passwords, password files, test keys, encryption codes or other information necessary to access the digital device or ESI.

**B.     Searching the Forensic Images.**

a.     Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques.  In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant.  The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.  Those techniques, however, may necessarily expose many or all parts of a hard drive to human inspection in order to determine whether it contains evidence described by the warrant.

b.     These methodologies, techniques and protocols may include the use of a "hash value" library to exclude normal operating system files that do not need to be further searched.  Agents may also utilize hash values to exclude certain known files, such as the operating system and other routine software, from the search results.  However, because the evidence I am seeking does not have particular known hash values, agents will not be able to use any type of hash value library to locate the items identified in Attachment B.

**REQUEST FOR SEALING**

38.     It is respectfully requested that this Court issue an order sealing, as described in the Motion to Seal submitted with this warrant, all papers submitted in support of this application, including the application, affidavit and search warrant.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation and disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation.  Disclosure of these materials would give the target of the investigation an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution.

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

39.     Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of the crimes of 18 U.S.C. §§ 1030 (unauthorized damage to a protected computer) and 1343 (wire fraud) are located on devices on the person of the SUBJECT or in his immediate control, as more fully described in Attachment A to this Affidavit, as well as on and in any digital devices or other electronic storage media found on the SUBJECT.  I therefore request that the court issue a warrant authorizing a search of the SUBJECT, as well as any digital devices and electronic storage media located in his control, for the items more fully described in Attachment B hereto, incorporated herein by reference, and the seizure of any such items found therein.


Elliott Peterson, Affiant
Special Agent
Federal Bureau of Investigation


*The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on this 27 day of July, 2018.*


J. RICHARD CREATURA
United States Magistrate Judge


AFFIDAVIT OF SPECIAL AGENT ELLIOT PETERSON
USAO# 2018R00928 - 21

1

## **ATTACHMENT A**

2      The property to be searched is **the person of the SUBJECT, Kenneth Currin**

3   **Schuchman, within the Western District of Washington,** further described as a white

4   adult male, DOB 04-27-1998, height 6'01", weight 200 pounds, and any digital devices

5   or other electronic storage media found in his immediate possession or control.

6

7

8

9

10

11

12                    

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed); photocopies or other photographic form; and electrical, electronic, and magnetic form (such as tapes, cassettes, hard disks, floppy disks, diskettes, compact discs, CD-ROMs, DVDs, optical discs, Zip cartridges, printer buffers, smart cards, or electronic notebooks, laptop computers, cell phones, or any other electronic storage medium) that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. §§ 1030 (unauthorized damage to a protected computer) and 1343 (wire fraud):

1. All records relating to violations of 18 U.S.C. §§ 1030 (unauthorized damage to a protected computer) and 1343 (wire fraud) and involving the SUBJECT since July 2016, including:

    a. Records related to Distributed Denial of Service (DDOS) attack(s);
    b. Records related to the creation, development, operation, maintenance, purchase, or sale of a botnet(s);
    c. Records and information relating to malicious software;
    d. Records regarding the identity or location of co-conspirator(s);
    e. Communications among co-conspirators;
    f. Regards regarding the identity or location of victim(s);
    g. Records and things related to the use of Internet Protocol addresses 185.188.206.99, 45.32.238.229, 208.78.71.34, as well as the domains nexusiotsolutions.com, nexuszeta.com, and zetastress.net;
    h. Evidence of communications with devices associated with criminal botnets, including:
        i. routers, modems, and network equipment used to connect computers to the Internet;
        ii. records of Internet Protocol addresses used;
        iii. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 23

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

2.  Any digital devices[3] or other electronic storage media[4] and/or their components that were or may have been used as a means to commit the offenses described on the warrant, including violations of 18 U.S.C. § 1030, which include:

    a.  Any digital device or other electronic storage media capable of being used to commit, further, or store evidence of the offenses listed above;

    b.  Any digital devices or other electronic storage media used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, plotters, encryption devices, and optical scanners;

    c.  Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

    d.  Any documentation, operating logs and reference manuals regarding the operation of the digital device or other electronic storage media or software;

    e.  Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

    f.  Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

    g.  Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

---

[3] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players.
[4] Electronic Storage media is any physical object upon which electronically stored information can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 24

3. For any digital device or other electronic storage media whose seizure is otherwise authorized in this warrant, or upon which electronically stored information that is called for by this warrant may be contained, or that may contain things otherwise called for by this warrant:

    a. evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b. evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c. evidence of the lack of such malicious software;

    d. evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

    e. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

    f. evidence of the times the digital device or other electronic storage media was used;

    g. passwords, encryption keys, and other access devices that may be necessary to access the digital device or other electronic storage media;

    h. documentation and manuals that may be necessary to access the digital device or other electronic storage media or to conduct a forensic examination of the digital device or other electronic storage media;

    i. contextual information necessary to understand the evidence described in this attachment.

## SEARCH TECHNIQUES

In accordance with the information in this Affidavit, law enforcement personnel will execute the search of digital devices seized pursuant to this warrant as follows:

    a. The search team will conduct an initial review of any digital devices or other electronic storage media located on the SUBJECT's person or in his immediate control, as described in Attachment A that are capable of containing data or items that fall

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 25

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

within the scope of Attachment B to this Affidavit, to determine if it is possible to secure the electronically stored information ("ESI") contained on these devices onsite in a reasonable amount of time and without jeopardizing the ability to accurately preserve the data.

b.      If, based on their training and experience, and the resources available to them at the search site, the search team determines it is not practical to make an on-site image within a reasonable amount of time and without jeopardizing the ability to accurately preserve the data, then the digital devices or other electronic storage media will be seized and transported to an appropriate law enforcement laboratory to be forensically copied ("imaged") and reviewed.

c.      In order to examine the ESI in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of any digital device or other electronic storage media that is capable of containing data or items that fall within the scope of Attachment B to this Affidavit.[5]  In addition, appropriately trained personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data fall within the list of items to be seized pursuant to the warrant.  In order to search fully for the items identified in the warrant, law enforcement personnel, which may include investigative agents, may then examine all of the data contained in the forensic image/s and/or on the digital devices to view their precise contents and determine whether the data fall within the list of items to be seized pursuant to the warrant.

d.      The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to the warrant.

e.      A forensic image may be created of either a physical drive or a logical drive.  A physical drive is the actual physical hard drive that may be found in a typical computer.  When law enforcement creates a forensic image of a physical drive, the image will contain every bit and byte on the physical drive.  A logical drive, also

---

[5] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices or other electronic storage media is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures.  When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties.  Computer forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence.  Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess.  Computer forensic examiners, however, often lack the factual and investigative expertise that an investigative agent may possess on any given case.  Therefore, it is often important that computer forensic examiners and investigative personnel work closely together.

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 26

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

known as a partition, is a dedicated area on a physical drive that may have a drive letter assigned (for example the c: and d: drives on a computer that actually contains only one physical hard drive). Therefore, creating an image of a logical drive does not include every bit and byte on the physical drive. Law enforcement will only create an image of physical or logical drives physically present on or within the subject device. Creating an image of the devices located at the search locations described in Attachment A will not result in access to any data physically located elsewhere. However, digital devices or other electronic storage media at the search locations described in Attachment A that have previously connected to devices at other locations may contain data from those other locations.

        f.     If, after conducting its examination, law enforcement personnel determine that any digital device is an instrumentality of the criminal offenses referenced above, the government may retain that device during the pendency of the case as necessary to, among other things, preserve the instrumentality evidence for trial, ensure the chain of custody, and litigate the issue of forfeiture. If law enforcement personnel determine that a device was not an instrumentality of the criminal offenses referenced above, it shall be returned to the person/entity from whom it was seized within 60 days of the issuance of the warrant, unless the government seeks and obtains authorization from the court for its retention.

        In order to search for ESI that falls within the list of items to be seized pursuant to Attachment B to this Affidavit, law enforcement personnel will seize and search the following items (heretofore and hereinafter referred to as "digital devices"), subject to the procedures set forth above:

        a.     Any digital device capable of being used to commit, further, or store evidence of the offense(s) listed above;

        b.     Any digital device used to facilitate the transmission, creation, display, encoding, or storage of data, including word processing equipment, modems, docking stations, monitors, printers, cameras, encryption devices, and optical scanners;

        c.     Any magnetic, electronic, or optical storage device capable of storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives, camera memory cards, media cards, electronic notebooks, and personal digital assistants;

        d.     Any documentation, operating logs and reference manuals regarding the operation of the digital device, or software;

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1           e.      Any applications, utility programs, compilers, interpreters, and other

2   software used to facilitate direct or indirect communication with the device hardware, or
ESI to be searched;

3

4           f.      Any physical keys, encryption devices, dongles and similar physical
items that are necessary to gain access to the digital device, or ESI; and

5

6           g.      Any passwords, password files, test keys, encryption codes or other
information necessary to access the digital device or ESI.

7

8   **The seizure of digital devices or other electronic storage media and/or their
components, as set forth herein, is specifically authorized by this search warrant, not**

9   **only to the extent that such digital devices or other electronic storage media constitute
instrumentalities of the criminal activity described above, but also for the purpose of**

10  **conducting off-site examinations of their contents for evidence, instrumentalities, or
fruits of the aforementioned crimes.**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SPECIAL AGENT ELLIOTT PETERSON
USAO# 2018R00928 - 28